UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

| | | |
|---|---|---|
| KENNY R. CHAPMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 2:17-CV-112 |
| | ) | |
| V. | ) | |
| | ) | |
| Nancy A. Berryhill, Acting | ) | |
| Commissioner of Social Security, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*\*

Kenny R. Chapman brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying his claim for disability insurance benefits (DIB). The Court, having reviewed the record, will **AFFIRM** the Commissioner's decision as it is supported by substantial evidence.

**I.**

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a de novo review,

resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). The substantial evidence standard "allows considerable latitude to administrative decision makers" and "presupposes that there is a zone of choice within which the [decision makers] can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation and internal quotations omitted). "The substantial evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (citation and internal quotations omitted).

The ALJ, in determining disability, conducts a five-step analysis. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As

to the last step, the burden of proof shifts from the claimant to the Commissioner. *Id.; see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**II.**

In August 2013, Plaintiff applied for disability insurance benefits (DIB), alleging disability beginning in April 2013, due to a litany of physical and mental conditions (Administrative Record (Tr.) 123, 316, 390). His application was denied and he pursued and exhausted his administrative remedies (Tr. 1-7 (Appeals Council denial of review), 123-35 (administrative law judge (ALJ) decision), 167-96 (ALJ hearing), 233-36 (initial denial), 239-41 (reconsideration denial)). This case is ripe for review. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

**A. Medical Evidence, Work History, and Hearing Testimony**

In May 2013, just after his alleged onset of disability, Plaintiff followed up at Health Point to have earwax and skin lesions removed (Tr. 635). He had no other complaints (Tr. 634). There is no evidence that he received additional treatment at Health Point until March 2014 (Tr. 667). In the meantime, he was seen in the emergency department. In July 2013, he was "rambling about illogical stories" in the emergency room (Tr. 580). On admission, he was diagnosed with a mood disorder and assigned a global assessment of functioning (GAF) score of 30 (Tr. 581),

indicating that his behavior was influenced by delusions or that he had a serious impairment in communication or judgment or an inability to functioning almost all areas. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. text revision 2000). Rodney Vivian, M.D., noted that he was "avoidant, spen[t] most of his days in bed, refuse[d] to participate in any kind of problem solving or goal setting and is focused on getting his needs met by other people" (Tr. 583-84). When it became clear that his "family was not going to provide housing, [he] requested discharge" (Tr. 584). On discharge, he was diagnosed with a mood disorder and a personality disorder with dependent features and assigned a GAF of 60, indicating moderate symptoms or functional limitations (Tr. 584). *See id.*

Throughout 2015 Plaintiff was seen occasionally for headaches and mood disorders (Tr. 780-84, 952-62). Plaintiff noted at one visit that his short-term goal was a "complete assessment to help with his disability claim." (Tr. 826). Plaintiff's medical records reflect that he asked his therapist to "lie and say he is too ill to live on his own." (Tr. 902). The same therapist diagnosed Plaintiff with "malingering." (Tr. 904).

Plaintiff (represented by an attorney at the time), testified at the July 2016 hearing that he stopped working in April 2013, but returned to work from January until November 2014 doing temporary tax work earning $12,377.93 (Tr. 174, 363). He worked

again in 2015 doing temporary tax work through October of that year, earning $11,627.27 (Tr. 175-76, 185, 363). He also worked the month of January 2016, the month of April 2016, and a week in June 2016 (Tr. 177).

Plaintiff testified that he had experienced daily migraine headaches since 1997 (Tr. 179). According to Plaintiff, for "[a] few years at least," his headaches had been so bad he could not tolerate them even with medication, but he would just force himself to go to work (Tr. 179-80). He also testified that he had problems with anxiety since he was in college, which got worse in 2013 (Tr. 180). Nevertheless, he was able to force himself to continue to work (Tr. 180-81). According to Plaintiff, he has thoughts of suicide, but has never attempted to kill himself (Tr. 181). Plaintiff then told the ALJ that, even though he had worked for significant periods of time since he became disabled, he believed he could not work because of his fatigue (Tr. 183).

Based on this evidence in the record and testimony at the hearing, The ALJ found that although Plaintiff could not perform his past work, he had no exertional impairments, but was limited to simple, low-stress work with limited social interaction and the ability to be off-task 10 percent of the time and absent one day per month (Tr. 128, 133-34).

**B. ALJ's Finding that Plaintiff Engaged in Substantial Gainful Employment**

Plaintiff admits he worked after the alleged disability onset date. Plaintiff challenges the ALJ's consideration of the fact that he worked after his alleged onset of disability because while "I did some substantial gainful work . . . but again, on and off . . . NOT THE ENTIRE TIME" (DE 19, Pl. Br. at 3, 5, and 8). Plaintiff bears the burden of proving he is disabled, i.e., that is incapable of working for at least 12 consecutive months, 20 C.F.R. § 404.1505, including proving that he was not engaged in substantial gainful activity (SGA). 20 C.F.R. § 404.1520(a)(4)(i); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). There was no 12 consecutive-month period that Plaintiff was not engaged in SGA. While he did not work from April until December 2013, he began working in January 2014 and engaged in SGA until October 2014 (Tr. 174, 363). Plaintiff then worked again at SGA levels from January until October 2015 (Tr. 175-76, 185, 363). The ALJ's determination that Plaintiff was engaged in SGA was supported by Plaintiff's own admissions and the uncontroverted evidence in the record. Although the ALJ went on to Step Two of the analysis, it was not necessary to do so. The ALJ could have properly denied the claim at Step One based on Plaintiff's SGA.

**C. ALJ's consideration of Plaintiff's Back Pain, Headaches, Mental Impairments, and Fatigue**

Plaintiff challenges the ALJ's consideration of his back pain, headaches, mental impairments, and fatigue. The Court can easily dispose of each of these claims.

There was no evidence of back problems in the record before the ALJ from 2013 onward, and Plaintiff's attorney conceded Plaintiff "did not have any recent evidence for back problems." (Tr. 126 and 195). The ALJ also observed that, in 2013, Plaintiff had a normal range of motion and normal muscle tone (Tr. 126, *see* Tr. 599). And in 2015, Plaintiff had normal strength, normal muscle tone, normal gait, and intact sensation (Tr. 126, *see* Tr. 784). Thus, the ALJ's decision that Plaintiff's back impairment is not medically determinable was supported by substantial evidence.

Plaintiff next challenges the ALJ's consideration of his headaches (Pl. Br. at 4, 8). The ALJ found that migraine headaches were a severe impairment (Tr. 126). But as the ALJ observed (Tr. 129), Plaintiff claims to have had migraine headaches since 1997, but nevertheless worked with them (Tr. 179). Moreover, while Plaintiff claimed to have a migraine headache every day during the relevant time period, Plaintiff worked at SGA 20 out of the 40 months he claimed to be disabled (Tr. 174-75, 363). Given this evidence, the ALJ reasonably found Plaintiff's claims of disabling headaches to be inconsistent with the record as a whole.

Regarding Plaintiff's mental condition, the ALJ considered that Plaintiff's own therapist raised serious concerns about

Plaintiff's veracity and motives in her treatment notes (Tr. 129, *see* Tr. 902 and 904). Under the Commissioner's regulations in effect at the time of the ALJ's decision, the ALJ was required to consider his activities of daily living in assessing his mental impairments. 20 C.F.R. § 404.1520a(c)(3) (2016).4 The ALJ reasonably concluded that Plaintiff had only a mild limitation in his activities of daily living: his activities were fairly normal, he ran errands, went to stores and the library, ate dinner, maintained his hygiene, and worked (Tr. 127, 402).

Plaintiff also challenges the ALJ's decision because the ALJ noted that Plaintiff used to see a psychiatrist and take medication for depression, but had not for several years, because he started seeing a psychiatrist in 2017 (Pl. Br. at 7). But that this evidence was never submitted to the agency (*see* Doc. 19-1 at 7-12, *see also* Doc. 18) and does not qualify for remand under sentence six, as Plaintiff has not shown how such evidence, dated more than a year after the ALJ's decision, is material such that it justified remand under sentence six of 42 U.S.C. § 405(g).

Plaintiff challenges the ALJ's consideration of the fact that he graduated college with a bachelor's degree (Pl. Br. at 9-10). This was a relevant consideration, because, as Plaintiff concedes, he had his longstanding mental impairments at the same time he was able to graduate with his bachelor's degree. This fact—and the fact that he continued to work despite these impairments—shed light

on how functional Plaintiff was despite his impairments and supports the ALJ's decision that he could perform the minimal mental demands of unskilled work. The ALJ's decision regarding Plaintiff's mental impairments was well-supported by the evidence in the record.

Finally, Plaintiff challenges the ALJ's consideration of his fatigue (Pl. Br. at 6). However, there is no indication that Plaintiff sought treatment for fatigue or was diagnosed with fatigue during the relevant time period, other than Plaintiff's self-reports of a history of fatigue (Tr. 583-84, 597, 634, 663-65, 667, 722-24, 737-39, 749-52, 764-68, 780-84, 823).

The ALJ accounted for Plaintiff's mental impairments and headaches by limited him to simple, low-stress work, with limited social contact that permitted him to be off-task 10 percent of the day and absent one day per month (Tr. 128, 133). Plaintiff has not shown that his claimed limitations from fatigue or back pain are in excess of the ALJ's already-restrictive residual functional capacity.

### III.

The Court having found no legal error on the part of the ALJ and that his decision is supported by substantial evidence, the Acting Commissioner's final decision is **AFFIRMED**.

Accordingly,

**IT IS ORDERED** that Plaintiff's motions for summary judgment (DE 18 and 19) be, and the same hereby are, **DENIED** and the Commissioner's motion for summary judgment (DE 21) be, and the same hereby is, **GRANTED**.

A separate judgment in conformity herewith shall this date be entered.

This the 12th day of September, 2018.

Signed By:
*Joseph M. Hood*
Senior U.S. District Judge